134 F.3d 422
 328 U.S.App.D.C. 266, Util. L. Rep. P 14,187
 PENNSYLVANIA OFFICE OF CONSUMER ADVOCATE, et al., Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Carnegie Natural Gas Company, et al., Intervenors.
 Nos. 93-1662, 93-1666.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 14, 1997.
Decided Feb. 3, 1998.
 
 Denise C. Goulet, Harrisburg, PA, argued the cause for petitioners, with whom Irwin A. Popowsky, Harrisburg, PA, Lawrence F. Barth and John F. Povilaitis were on the briefs. Veronica A. Smith, Gainesville, FL, entered an appearance.
 Timm L. Abendroth, Washington, DC, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent, with whom Jay L. Witkin, Solicitor, Washington, DC, John H. Conway, Deputy Solicitor, and Susan J. Court, Attorney, were on the brief. Joel M. Cockrell, Attorney, Washington, DC, entered an appearance.
 Timm L. Abendroth, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent, with whom Jay L. Witkin, Solicitor, John H. Conway, Deputy Solicitor, and Susan J. Court, Attorney, were on the brief. Joel M. Cockrell, Attorney, entered an appearance.
 Before: EDWARDS, Chief Judge, WALD and RANDOLPH, Circuit Judges.
 Opinion for the Court filed by Chief Judge EDWARDS.
 EDWARDS, Chief Judge:
 
 
 1
 On December 19, 1997, the court issued its decision in Pennsylvania Office of Consumer Advocate v. FERC, 131 F.3d 182 (D.C.Cir.1997), denying petitioners' claim that the Federal Energy Regulatory Commission ("FERC" or "Commission") erred in adhering to an established policy in approving a tariff provision of Carnegie Natural Gas Company ("Carnegie") permitting Carnegie to retain revenues resulting from the pipeline's assessment of penalties against its customers. Contemporaneously with the issuance of the court's decision, counsel for FERC submitted a letter to the court to correct misstatements made at oral argument. See Letter from FERC Correcting Misstatement At Oral Argument (Dec. 18, 1997) ("December 18 Letter"). The letter from FERC's counsel called into question certain purported facts relied upon by the court in reaching its original decision in this case. The parties were ordered to show cause as to whether the case should be reheard or the court's decision should be revised.
 
 
 2
 * * * *
 
 
 3
 The court's decision upholding FERC's orders was informed by three factors: (1) petitioners' failure to offer any evidence that Carnegie has obtained "windfall" revenues as a result of the penalty provisions; (2) the Commission's pledge to monitor the levels of penalty revenues obtained by pipelines and to revisit the issue if necessary; and (3) the fact that the Commission has established accounting mechanisms that will facilitate its tracking of Carnegie's penalty revenues. The court also emphasized that it was appropriate for FERC to exercise its predictive judgment in the context of a proceeding pursuant to section 5 of the Natural Gas Act, 15 U.S.C. § 717d (1994).
 
 
 4
 With respect to the first factor noted above, the court elaborated:
 
 
 5
 [C]ounsel for the Commission asserted at oral argument, without contradiction, that in 1996--apparently the first year for which information on the levels of penalty revenues recovered by pipelines is generally available--Carnegie collected no penalty revenues whatsoever.
 
 
 6
 131 F.3d at 186.
 
 
 7
 With respect to the third factor noted above, the court elaborated, in pertinent part:
 
 
 8
 The Commission asserts, and petitioners do not dispute, that pipelines are obligated under 18 C.F.R. §§ 260.1 and 260.2 to file an annual report that includes a statement of their revenues under Account No. 495 of the Commission's Uniform System of Accounts. See id. (setting forth requirements to file "FERC Form No. 2" or "FERC Form No. 2-A"); Respondent's Br. at 8 n.3. That account includes a list of miscellaneous revenue sources, and requires pipelines to keep "in a separate subaccount revenues from penalties earned pursuant to tariff provisions, including penalties associated with cashout settlements." 18 C.F.R. pt. 201, at 603 (1997).... It thus appears undisputed that the Commission will have accounting mechanisms in place to track the levels of penalty revenues garnered by Carnegie.
 
 
 9
 131 F.3d at 187. This passage was written in reliance on FERC's assertion at oral argument that Carnegie is required to report its penalty revenues on an annual basis. The oral assertion by FERC was corroborated by a footnote in FERC's brief, which quotes from relevant regulations to the effect that Account No. 495 requires pipelines "to keep in a separate subaccount revenues from penalties earned pursuant to tariff provisions." Respondent's Br. at 8 n.3 (internal quotation omitted).
 
 
 10
 Counsel for FERC now acknowledges that he misspoke at oral argument with respect to Carnegie's reporting obligations under applicable regulations. Carnegie is considered a "nonmajor" pipeline--as defined in 18 C.F.R. §§ 260.1(b) and 260.2(b) (1997)--and therefore is only required to file an abbreviated "Form 2-A" rather than the standard "Form 2." See Response Of Respondent FERC To Show Cause Order, No. 93-1662, at 3-4 (filed Jan. 9, 1998) ("FERC Response"); December 18 Letter. As it turns out, Form 2-A includes a line for "Other Gas Revenues" pursuant to Account No. 495, but it does not include a sheet for separately reporting the subaccount penalty revenues. See FERC Response, at 3-4; Carnegie's 1996 FERC Form No. 2-A, reprinted in Attachment to FERC Response. The regular Form 2, which is filed by major pipelines, does include a sheet for separately reporting the subaccount penalty revenues. See FERC Response, at 3.
 
 
 11
 Counsel for FERC, in his December 18 Letter to the court, also clarified his statement at oral argument that the most recent annual report filing showed that Carnegie had not collected any penalty revenues "during the recent period"--i.e., 1996. Because Carnegie only has to file Form 2-A, Carnegie's recent annual report provides no specific information on Carnegie's penalty revenues. However, counsel for FERC avowed in the December 18 Letter "that in fact Carnegie has not collected any penalty revenues." Id.
 
 
 12
 In response to the court's show-cause order, FERC argues that the court's decision is unaffected by counsel's misstatements and no rehearing or revision is required. Petitioner, however, contends that counsel's misstatement of certain facts at oral argument directly affects primary factors upon which the court's opinion rests and, therefore, the court should reconsider and revise its judgment on the merits. Having considered the parties' submissions and the entire record in this case, we agree that the court's original decision must be corrected and clarified insofar as it relies on misstatements from FERC counsel; however, we find no good basis to overturn the original result in this case.
 
 
 13
 * * * *
 
 
 14
 The court's original opinion states that 1996 is "apparently the first year for which information on the levels of penalty revenues recovered by pipelines is generally available." 131 F.3d at 186. This statement is true only insofar as it suggests that pipelines are obliged to keep records of their penalty revenues. Carnegie, as a nonmajor pipeline, is required to maintain internal records under Account No. 495 that delineate its penalty revenues. However, only "major" pipelines have an obligation to report penalty revenues in a separate subaccount on Form 2. Carnegie, which files Form 2-A on an annual basis, need not specify which portion of its "Other Gas Revenues" under Account No. 495 is attributable to penalty revenues. Thus, the information on Carnegie's penalty revenues is not "generally available"--i.e. available to the public--and the statement in the original opinion is misleading as applied to Carnegie.
 
 
 15
 The original opinion also states: "counsel for the Commission asserted at oral argument, without contradiction, that in 1996 ... Carnegie collected no penalty revenues whatsoever." 131 F.3d at 186 (emphasis added). FERC provides no documentation to support its assertion that Carnegie received no penalty revenues in 1996, nor does it suggest that FERC is in possession of such documentation. Rather, FERC appears to base its assertion only on the assurances of representatives of Carnegie. In light of the fact that Carnegie was not obligated to include the penalty revenues subaccount in its 1996 annual report, petitioners contend that the issue of the level of penalty revenues from 1996 is not undisputed. See Petitioners' Response To Show Cause Order, No. 93-1662, at 2 (filed Jan. 9, 1998) ("Petitioners' Response"). On the other hand, one might say that the Commission's position is not truly contradicted unless petitioners supply rebuttal evidence, such as a complaint by one of Carnegie's customers to the effect that they were assessed penalties.
 
 
 16
 Finally, the court's original opinion is misleading with respect to the requirement of Account No. 495. The opinion states: "That account includes a list of miscellaneous revenue sources, and requires pipelines to keep 'in a separate subaccount revenues from penalties earned pursuant to tariff provisions, including penalties associated with cash-out settlements.' 18 C.F.R. pt. 201, at 603 (1997)." 131 F.3d at 187. Literally, this appears to be true; Carnegie is required to maintain internal records that delineate its penalty revenues. See FERC Response, at 3. However, the passage neglects to mention that FERC's current Form 2-A does not require nonmajor pipelines like Carnegie to separately report the Account No. 495 subaccount balances on an annual basis. As written, the passage might be read to suggest that all pipelines, whether they file Form 2 or Form 2-A, are required to report their penalty revenues in a separate subaccount on an annual basis.
 
 
 17
 * * * *
 
 
 18
 Although it is clear that the original opinion of the court is tainted by misinformation, based on the misstatements of FERC counsel, we can find no infirmity in the judgment upholding FERC's decision to adhere to an established policy of allowing a pipeline to retain penalty revenues.
 
 
 19
 Petitioners still fail to offer any evidence that Carnegie has obtained "windfall" revenues as a result of the penalty provisions. Counsel for the Commission has asserted that in 1996--apparently the first year in which pipelines were required to keep records of penalty revenues pursuant to the Commission's Uniform System of Accounts--Carnegie collected no penalty revenues whatsoever. Petitioners give us no reason to doubt the veracity of this assertion. Petitioners do not claim, for example, that any of Carnegie's customers have been assessed penalties under the pipeline's new tariff provisions.
 
 
 20
 At oral argument, counsel for the Commission erroneously stated that the annual report most recently filed by Carnegie showed that the pipeline had not collected any penalty revenues during that recent period. The same counsel subsequently informed the court, through his December 18 Letter, that in fact Carnegie, as a "nonmajor" pipeline as defined by 18 C.F.R. §§ 260.1(b) and 260.2(b), was not required by Commission rules to specifically disclose in its annual report the amount of penalty revenues that the pipeline received, although the pipeline was required to disclose a broader category of revenues that included the penalty revenues. However, Carnegie is "required to maintain [its] records by including any penalty revenue in a separate subaccount" pursuant to Account No. 495 of the Uniform System of Accounts. December 18 Letter (emphasis added); 18 C.F.R. Pt. 201.495, item 9 (1997). Counsel further avowed in the letter, in response to inquiry from petitioners after oral argument, that the Commission "has reconfirmed that in fact Carnegie has not collected any penalty revenues." December 18 Letter; see also FERC Response, at 4 n.4.
 
 
 21
 Furthermore, it remains true, as the original opinion pointed out, that "the Commission has established accounting mechanisms that will facilitate its tracking of Carnegie's penalty revenues." 131 F.3d at 187. Carnegie is required under Account No. 495 of the Commission's Uniform System of Accounts, which mandates a statement by pipelines of their "Other gas revenues," to "[i]nclude in a separate subaccount revenues from penalties earned pursuant to tariff provisions, including penalties associated with cash-out settlements." 18 C.F.R. Pt. 201.495, item 9. Moreover, the Commission asserts, and petitioners do not dispute, that pipelines are obligated under 18 C.F.R. §§ 260.1 and 260.2 to file an annual report that includes an aggregate statement of miscellaneous revenues under Account No. 495. See §§ 260.1 and 260.2 (setting forth requirements to file "FERC Form No. 2" or "FERC Form No. 2-A"); Carnegie's 1996 FERC Form 2-A, reprinted in Attachment to FERC Response.
 
 
 22
 Counsel for the Commission clarified subsequent to oral argument that Carnegie, as a "nonmajor" pipeline, need not list the subaccount designated for penalty revenues under Account No. 495 in the pipeline's annual report to the Commission. Certainly, a more specific annual reporting requirement for nonmajor pipelines would improve the Commission's ability to monitor penalty revenues. Nevertheless, on the record at hand, it appears that the existing accounting regime will assist the Commission in periodically reassessing its penalty-retention policy. In short, the Commission will have sufficient accounting mechanisms in place to track the levels of penalty revenues garnered by Carnegie.
 
 
 23
 It is important to note that the original opinion of the court rested, in significant measure, on the deference due to FERC with respect to the agency's predictive judgments. Deference is certainly due in the instant case, where petitioners present no serious allegation (let alone concrete proof) of any "windfall" revenues garnered by Carnegie.
 
 
 24
 It is also noteworthy that the court's reliance upon certain precedent in its original opinion is in no way undercut by the misstatements of counsel. As pointed out in the original opinion, this court held, in Association of Oil Pipe Lines v. FERC, 83 F.3d 1424, 1437 (D.C.Cir.1996), and Time Warner Entertainment Co. v. FCC, 56 F.3d 151, 172-73 (D.C.Cir.1995), that an agency conducting a ratemaking proceeding is not required to include "offsets" for potential future revenue gains by regulated entities, where there is no evidence of such gains in the record before the agency. In neither case did the court rest its judgment on the agency's capacity to monitor revenues through individual periodic reports. We see no good reason to reach a different result in this case. For now, the agency's predictive judgment is entitled to respect.
 
 
 25
 * * * *
 
 
 26
 Accordingly, the order to show cause is hereby discharged, the original opinion of the court is corrected insofar as indicated above, and the original judgment of the court affirmed.